**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

LARKIN LEE ANDERSON, JR.; JAYLONHURSTON; ERIK GUILLEN, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

AMAZON.COM, INC., AMAZON.COM SERVICES, LLC, and AMAZON LOGISTICS, INC.,

*Defendants*

DARIUS DAVIS,

*Plaintiff*,

v.

AMAZON.COM, INC., AMAZON.COM SERVICES, LLC, and AMAZON LOGISTICS, INC.,

*Defendants*.

KORY ANDERSON,

*Plaintiff*,

v.

AMAZON.COM, INC., AMAZON.COM SERVICES, LLC, and AMAZON LOGISTICS, INC.,

*Defendants*.

Civil Action Nos.
2:26-cv-09977 (JXN-JSA);
3:26-cv-09948 (JXN-JSA);
2:26-cv-14176 (JXN-JSA)

Motion Day: November 16, 2026

**MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION TO APPOINT SWCK AS INTERIM CO-LEAD COUNSEL AND JAVERBAUM AS LIAISON COUNSEL**

Matthew S. Weiler
**SCHNEIDER WALLACE**
**COTTRELL KIM LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
mweiler@schneiderwallace.com

*Attorneys for Plaintiffs Darius Davis,*
*Kory Anderson, and the Proposed Class*
[*Additional counsel listed on signature page*]

## TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 3

I. Given Amazon's resources, more than one Interim Lead Counsel firm is required. ....... 3

II. The Court should appoint SWCK as Interim Co-Lead Counsel. ........ 5

III. The Court should appoint Javerbaum as Liaison Counsel. ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Amazon.com, Inc.*,
No. 2:26-cv-14176 ("*Anderson*") (D.N.J.) .......... 3

*Anderson, Jr. v. Amazon.com, Inc.*,
No. 2:26-cv-09977 ("*Anderson, Jr.*") (D.N.J.) .......... 1, 3

*Attorney General of the State of New Jersey v. Amazon.com, Inc.*,
No. 2:26-cv-09814 (D.N.J.) .......... 2

*Buonasera v. Honest Co., Inc.*,
318 F.R.D. 17 (S.D.N.Y. 2016) .......... 8

*Davis v. Amazon.com, Inc.*,
No. 2:26-cv-13498 ("*Davis*") (D.N.J.) .......... 3

*Davis v. Amazon.com, Inc.*,
No. 3:26-cv-09948 (N.D. Cal.) .......... 3

*Durso v. Samsung Elecs. Am., Inc.*,
2013 WL 4084640 (D.N.J. Aug. 7, 2013) .......... 5, 7

*Ehler v. IPEX, Inc.*,
2009 WL 1392075 (D. Colo. May 15, 2009) .......... 9

*Gilead Tenofovir Cases*,
No. CJC-19-005043 (Cal. Super.) .......... 10

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
240 F.R.D. 56 (E.D.N.Y. 2006) .......... 4, 5

*In re Apple Inc. Smartphone Antitrust Litig.*,
No. 2:24-md-03113-JXN-LDW (D.N.J.) .......... 6, 9

*In re Branded Beverage Antitrust Litig.*,
No. 7:25-cv-6440-CS (S.D.N.Y.) .......... 6

*In re JUUL Labs, Inc., Marketing, Sales Practices, and Prods. Liability Litig.*,
No. 19-md-02913-WHO (N.D. Cal.) .......... 10

*In re Lidoderm Antitrust Litig.*,
2017 WL 679367 (N.D. Cal. Feb. 21, 2017) .......... 9

*In re Nat'l Football Leagues Sunday Ticket Antitrust Litig.*,
2016 WL 6693146 (C.D. Cal. May 23, 2016) .......... 9

*In re Roundup Prods. Liability Litig.*,
MDL No. 2741 (N.D. Cal.) .......... 10

*In re Terazosin Hydrochloride*,
220 F.R.D. 672 (S.D. Fla. 2004) ........ 8

*In re Tether & Bitfinex Crypto Asset Litig.*,
No. 1:19-cv-09236-KPF (S.D.N.Y.) ........ 6

*In re Twitter Inc. Sec. Litig.*,
326 F.R.D. 619 (N.D. Cal. 2018) ........ 8

*In re Vanguard Chester Funds Litig.*,
625 F. Supp. 3d 362 (E.D. Pa. 2022) ........ 6

*Mitchell v. Kenvue, Inc.*,
2025 WL 1224229 ........ 5

*Khan v. Sedgwick Claims Mgmt. Inc.*,
No. 1:24-cv-13084-JFK (N.D. Ill.) ........ 7

*Nowak v. Ford Motor Co.*,
240 F.R.D. 355 (E.D. Mich. 2006) ........ 5

*Portable Power Inc. v. Energizer Holding Co.*,
No. 5:23-CV-02091-PCP (N.D. Cal.) ........ 6

**Other Authorities**

Josh Davis and Rose Kohles Clark, *2022 Antitrust Annual Report*, U.C. Law San Francisco Center for Litigation and Courts, at 17 (Sept. 2023) ........ 7

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.21 (2004) ........ 4

William B. Rubenstein, 3 NEWBERG & RUBENSTEIN ON CLASS ACTIONS, § 10.9 (6th ed. 2024)... 4

**Rules**

Fed. R. Civ. P. 23(g)(1)(A)(i) ........ 5

Fed. R. Civ. P. 23(g)(1)(A)(ii) ........ 6

Fed. R. Civ. P. 23(g)(1)(A)(iii) ........ 7

Fed. R. Civ. P. 23(g)(1)(A)(iv) ........ 8

Fed. R. Civ. P. 23(g)(3) ........ 4

Plaintiffs Darius Davis and Kory Anderson (collectively, the "Davis Plaintiffs")—individually and on behalf of a nationwide class of delivery drivers employed or formerly employed by Amazon Delivery Service Partners ("DSPs")—respectfully submit this memorandum of law in response to Plaintiffs Larkin Lee Anderson, Jr., Jaylon Hurston, and Erik Guillen's motion to appoint the Radice Law Firm as Interim Lead Counsel,[1] and in support of their cross-motion to appoint Schneider Wallace Cottrell Kim LLP ("SWCK"), along with the Radice Law Firm, as Interim Co-Lead Counsel and Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, P.C. ("Javerbaum") as Liaison Counsel.

**INTRODUCTION**

Amazon, at over $700 billion in revenue, is the largest company in the United States. Its enormous power over labor markets is not limited within its direct payroll, however. If Amazon's DSP workforce were a separate company, it would be (at over 400,000 employees) a top-ten employer.[2] A goliath, Amazon exerts monopsony power over its supposedly independent DSP workers whose wages are suppressed by a horizontal conspiracy among the supposedly independent DSP employers. Amazon has boundless resources and a powerful incentive to continue the scheme—one that impoverishes workers while Amazon hollows out Mainstreet America by driving transactions to its e-commerce empire powered by DSP delivery. In short, this litigation will require substantial resources and calls for an expanded leadership team.

Given the needs of this case, the Court should appoint SWCK along with the Radice Law Firm to co-lead this litigation, and Javerbaum as liaison counsel. SWCK is a plaintiff-side law firm

[1] *See Anderson, Jr. v. Amazon.com, Inc.*, No. 2:26-cv-09977 ("*Anderson, Jr.*"), Dkt. No. 25 ("Mtn.") (D.N.J.) (filed Oct. 16, 2026).

[2] https://qz.com/biggest-fortune-500-employers#meet-the-10-companies-with-the-most-employees-in-the-fortune-500.

with deep experience in antitrust class-action litigation and a team of twelve antitrust litigators. *See* Declaration of Matthew S. Weiler ("Weiler Decl."), Exhibit A (firm resume). On September 7, 2026, SWCK filed a class-action complaint on behalf of Davis and a nationwide class of Amazon DSP delivery drivers. Before doing so, the firm retained and consulted expert economists to analyze the alleged wage suppression and better inform the complaint. After learning that Anderson, Jr. had brought a similar action in this Court, Davis agreed to transfer his case for the sake of cooperation and efficiency. SWCK then filed a similar complaint in this Court on behalf of Anderson and a nationwide class.

The actions brought by all plaintiffs stem from the New Jersey Attorney General's allegations in its August 2026 complaint. Although the Radice Law Firm filed its action first, SWCK's class-action complaint was the first to include comprehensive economic analysis that expanded on New Jersey's allegations. To be clear, SWCK respects the qualifications of the Radice Law Firm and does not oppose its appointment as Interim Co-Lead Counsel. But given Amazon's vast resources,[3] and the significant stakes and sprawling scope of this case, the interests of the class will be better served by two interim co-leads rather than one.

## BACKGROUND

In August 2026, the Attorney General of the State of New Jersey filed a complaint in this Court against Amazon, alleging that it has systematically abused its purchasing power in the labor market for DSP delivery drivers in violation of the antitrust laws.[4] More specifically, the complaint asserted that Amazon has imposed a no-poach policy on ostensibly independent DSPs (among

---

[3] Amazon.com, Inc., Amazon.com Services, LLC, and Amazon Logistics, Inc. are referred to collectively as "Amazon."

[4] *See* Complaint, *Attorney General of the State of New Jersey v. Amazon.com, Inc.*, No. 2:26-cv-09814, Dkt. No. 1, ¶ 1 (D.N.J.) (filed Aug. 4, 2026).

other things), which led to suppressed wages and worse working conditions for DSP drivers. *Id.* ¶¶ 4, 16. Although the complaint only sought relief for DSP drivers in New Jersey, it explained that Amazon's conduct was "likely" harming DSP drivers "across the country." *Id.* ¶ 1.

In early September, after retaining and consulting labor-market economists to buffer its allegations, SWCK filed a complaint in the Northern District of California on behalf of Plaintiff Davis (a California resident) and a nationwide class of DSP delivery drivers.[5] Plaintiff Davis then agreed to transfer his case to this Court as well, for the sake of cooperation and efficiency.[6] Then, in mid-October, the Radice Law Firm filed an amended complaint on behalf of Anderson, Jr.[7] Soon after, SWCK filed another complaint in this Court on behalf of Plaintiff Anderson (a Washington State resident) and a nationwide class.[8]

SWCK has had discussions with the Radice Law Firm about co-leading this litigation. Weiler Decl., ¶ 6. Although these communications have been productive and founded in mutual respect, they have not resulted in an agreement. *Id.* SWCK will continue discussions with the Radice Law Firm to co-lead this litigation.

## ARGUMENT

### I. Given Amazon's resources, more than one Interim Lead Counsel firm is required.

The Davis Plaintiffs agree that this Court should "designate interim class counsel to act on behalf of the putative class before determining whether to certify the action as a class action."

---

[5] Weiler Decl., ¶¶ 3–4; *see* Complaint, *Davis v. Amazon.com, Inc.*, No. 3:26-cv-09948, Dkt. No. 1 (N.D. Cal.) (filed Sept. 7, 2026).

[6] Weiler Decl., ¶ 5; *see Davis v. Amazon.com, Inc.*, No. 3:26-cv-09948, Dkt. No. 19 at 2 (N.D. Cal.) (filed Oct. 8, 2026); *Davis v. Amazon.com, Inc.*, No. 2:26-cv-13498 ("*Davis*"), Dkt. No. 20 (D.N.J.) (transfer order received Oct. 16, 2026).

[7] *See Anderson, Jr.*, Dkt. No. 23 (filed Oct. 15, 2026).

[8] *See* Complaint, *Anderson v. Amazon.com, Inc.*, No. 2:26-cv-14176 ("*Anderson*"), Dkt. No. 1 (D.N.J.) (filed Oct. 30, 2026).

Fed. R. Civ. P. 23(g)(3); *see* Mtn. at 3. But given the needs of the case, more than one firm is required to best serve the putative class's interests. *See id.* at 3–5.

The resources of the Radice Law Firm, SWCK, and Javerbaum are necessary, because Amazon's resources are substantial, there is a parallel government action, and the litigation challenges Amazon's core exploitative practice of fixing wages for drivers at artificially low rates. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.21 (2004) ("Greater demands on counsel also arise from the following: [1] the amounts of money or importance of issues at stake; and [2] the difficulties of having to communicate and establish effective working relationships with numerous attorneys"); *see also* William B. Rubenstein, 3 NEWBERG & RUBENSTEIN ON CLASS ACTIONS, § 10.9 (6th ed. 2024) ("In larger cases, particularly multidistrict litigations, a court may need a more elaborate leadership structure for both the plaintiff and defendant side of the case. Cases may include lead counsel, liaison counsel, trial counsel, steering committees, coordinating committees, management committees, executive committees, etc.").

Indeed, one lead firm is not sufficient in these circumstances. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58 (E.D.N.Y. 2006) ("Although six firms may be too many, given the complexity of the case and the sheer numbers of litigants and counsel involved here, one firm does not appear to be enough to carry out the functions of interim class counsel.").

SWCK agrees that the Radice Law Firm is well qualified to co-lead this litigation. SWCK has worked productively with members of the Radice Law Firm in the past, and will continue to do so if appointed, just as it has in the *Apple* litigation with other co-lead counsel for the Indirect Purchaser Plaintiffs. Weiler Decl., ¶ 7; *see Air Cargo*, 240 F.R.D. at 57 (explaining that the Manual for Complex Litigation recommends consideration of "the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the

court"). The Radice Law Firm lists eight attorneys on its website, however, and SWCK has twelve attorneys in its antitrust group alone, along with an in-house e-discovery team and experienced class-action litigators in several other practice groups. *See* Weiler Decl., Ex. A.

## II. The Court should appoint SWCK as Interim Co-Lead Counsel.

Given SWCK's antitrust class-action experience—and the resources required to effectively prosecute this case—the Court should appoint SWCK as Interim Co-Lead Counsel. *See Durso v. Samsung Elecs. Am., Inc.*, 2013 WL 4084640, at *3 (D.N.J. Aug. 7, 2013) (explaining that a court "has the discretion to appoint more than one firm to act as co-lead counsel"); *Nowak v. Ford Motor Co.*, 240 F.R.D. 355, 363 (E.D. Mich. 2006) (appointing two firms as interim co-lead counsel). All the factors enumerated in Rule 23(g)(1)(C) favor this result.[9]

***First*,** SWCK has done "work . . . in identifying or investigating potential claims": counsel have conducted factual and legal research, retained and consulted labor economists, and filed two complaints. Fed. R. Civ. P. 23(g)(1)(A)(i); *see Durso*, 2013 WL 4084640, at *3 (concluding that the first factor was satisfied where counsel "investigated the[] claims by interviewing class members, researching the claims and engaging experts").

To be sure, the Radice Law Firm was the first to file a class action on behalf of DSP drivers, but neither the Radice Law Firm nor SWCK can be considered the "first-filing party," given that they both filed in the wake of the New Jersey Attorney General's action. Mtn. at 5. So, in this situation, it makes no sense to infer that the first-filing private party "has spent more time and resources investigating the matter." *Id.* (quoting *In re Vanguard Chester Funds Litig.*, 625 F. Supp.

[9] As Anderson, Jr. points out, "it appears to be generally accepted that the considerations set out in Rule 23(g)(1)(C), which govern the appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification." Mtn. at 4, n.11 (quoting *Mitchell v. Kenvue, Inc.*, 2025 WL 1224229, at *2 (citation and quotations omitted)).

3d 362, 367 (E.D. Pa. 2022)). But in any event, "courts are careful not to place too much weight on the order of filing." *Id.* at 4; *see Vanguard*, 625 F. Supp. 3d at 367 (same).

***Second***, counsel at SWCK have decades of collective experience in "handling class actions, other complex litigation, and the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(1)(A)(ii). The firm has served as class counsel and interim lead counsel in many antitrust class actions. *See* Weiler Decl., Ex. A.

Most relevant here, SWCK and Mr. Weiler are currently serving as co-lead counsel for indirect-purchaser plaintiffs in an antitrust class action before this Court alleging that Apple monopolized the smartphone market. *See In re Apple Inc. Smartphone Antitrust Litig.*, No. 2:24-md-03113-JXN-LDW (D.N.J.). The firm is also serving as co-lead counsel for direct-purchaser plaintiffs in an antitrust class action claiming that Energizer and Walmart agreed to inflate the prices of disposable batteries. *See Portable Power Inc. v. Energizer Holding Co.*, No. 5:23-CV-02091-PCP (N.D. Cal.). And the firm is serving as co-lead counsel for direct-purchaser plaintiffs in a similar antitrust class action alleging that Pepsi and Walmart agreed to inflate the prices of soft drinks. *See In re Branded Beverage Antitrust Litig.*, No. 7:25-cv-6440-CS (S.D.N.Y.).

In addition, the firm is serving as co-lead counsel in an antitrust class action alleging that the defendants artificially inflated the prices of bitcoin and other crypto-assets. *See In re Tether & Bitfinex Crypto Asset Litig.*, No. 1:19-cv-09236-KPF (S.D.N.Y.). In March 2026, Judge Failla certified two classes of direct purchasers of crypto-assets, including bitcoin. *See id.*, 2026 WL 629826, at *38 (S.D.N.Y. Mar. 6, 2026). And finally, SWCK is serving as sole lead counsel in an antitrust class action alleging that an insurance-services company entered into unlawful "no poach" agreements with its competitors to suppress employee compensation—similar to the allegations against Amazon. *See Khan v. Sedgwick Claims Mgmt. Inc.*, No. 1:24-cv-13084-JFK (N.D. Ill.).

In short, "counsel has experience handling class actions," having served as lead or co-lead counsel "in numerous State and Federal class actions, and has experience in complex litigation." *Durso*, 2013 WL 4084640, at *3.

***Third***, and relatedly, counsel at SWCK have deep "knowledge of the applicable law." Fed. R. Civ. P. 23(g)(1)(A)(iii). The firm's antitrust practice group is led by Matthew S. Weiler, who has practiced antitrust law on both sides of the "v" for twenty years, and now dedicates his practice to pursuing justice for consumers and small businesses. Currently, Mr. Weiler is spearheading the firm's efforts in the *Apple*, *Branded Beverages*, *Dungeness Crab*, *Energizer*, *Tether*, and *Sedgwick* antitrust class actions. He was also recently a key member of a trial team in an opioid-drug antitrust case, which resulted in an $85 million settlement less than a week before the case was set for its second stage of trial in Virginia state court. Mr. Weiler developed the legal theories, led oral arguments on most of the dispositive motions, and presented two of the clients as witnesses in the successful first stage of trial. The settlement, reached on behalf of five clients, is among the largest recent recoveries in pharmaceutical antitrust litigation under state antitrust law.[10] In total, the firm's antitrust practice group has recovered hundreds of millions of dollars for health plans in antitrust cases brought against drug manufacturers. Mr. Weiler has also represented plaintiffs in antitrust cases involving capacitors, inflight entertainment video games, disposable contact lenses, and UFC fighters.

SWCK has achieved pathbreaking results in antitrust class-action litigation. The *Portable Power* and *Branded Beverages* cases challenge the practices of Energizer and Pepsi, and their agreements with Walmart to inflate prices for direct purchasers and consumers more generally.

---

[10] *See* Josh Davis and Rose Kohles Clark, *2022 Antitrust Annual Report*, U.C. Law San Francisco Center for Litigation and Courts, at 17 (Sept. 2023) (explaining that class "indirect purchaser settlements averaged approximately $11 million" from 2009 to 2022).

SWCK has substantial expertise in litigating under California's Cartwright Act, including in *In re Cipro Cases I & II* where Mr. Weiler was part of a leadership team that achieved a $399 million cash settlement for California purchasers of Ciprofloxacin, one of the largest recoveries in the history of the Cartwright Act. *See* Weiler Decl., Ex. A.

In sum, counsel at SWCK have "extensive experience in the antitrust and complex litigation fields." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) ("The consideration that the Court finds to be most persuasive, however, relates to [proposed class counsel's] experience in, and knowledge of, the applicable law in this field.").

***Fourth*****,** and crucially, SWCK can commit substantial "resources . . . to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(iv). In this case against a corporate giant, SWCK's additional resources can help to level the playing field. *See In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 629 (N.D. Cal. 2018) (concluding that "[t]he appointment of co-class counsel [was] appropriate," because the case was "large," it was "defended by experienced, knowledgeable counsel," and the "additional resources" of a co-lead firm were desirable); *see also Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 19 (S.D.N.Y. 2016) (finding that this factor weighed in favor of appointing interim class counsel, because the "four law firms . . . together ha[d] substantial resources," including "a total of 88 attorneys in three different states").

Based in Emeryville, California, SWCK is one of the largest plaintiff-side firms in the western United States, with other offices located in Houston, Los Angeles, Chicago, and Washington D.C. The firm has more than a dozen attorneys with experience in complex antitrust class actions. *See* Weiler Decl., Ex. A. That list includes Managing Partner Todd Schneider, a

distinguished trial attorney who has tried cases across the country[11]; Jason Kim, who heads the firm's business-litigation-and-competition group and has 25 years of experience managing and trying complex cases; Ray Levine, who has been working on antitrust matters at SWCK since graduating from Michigan Law; and Braden Leach, a graduate of Berkeley Law who clerked for the U.S. Court of Federal Claims and the U.S. Court of Appeals for the Tenth Circuit.

As described above, the firm has a long history of prosecuting and resourcing class actions. In complex cases where defendants have vast resources at their disposal, courts routinely appoint multiple co-lead firms.[12] This Court should do the same.

## III. The Court should appoint Javerbaum as Liaison Counsel.

Javerbaum is a well-respected law firm based in New Jersey with a nationwide practice, specializing in litigation on behalf of plaintiffs. Mr. King and Javerbaum currently serve as liaison counsel for the Indirect Purchaser Plaintiffs in this Court in another important antitrust class against another one of the world's largest and most powerful corporations. *See In re Apple Inc. Smartphone Antitrust Litig.*, No. 2:24-md-03113-JXN-LDW (D.N.J.). In addition to the value of

---

[11] Mr. Schneider, a trial lawyer, has served as the managing partner of SWCK for over 30 years. He was appointed by the Chief Justice of the California Supreme Court to serve on the Advisory Committee on Civil Jury Instructions, the body responsible for drafting the Judicial Council of California Civil Jury Instructions. He has been reappointed multiple times and has served on the committee for over a decade. Mr. Schneider's leadership roles in the trial bar include serving as President of the San Francisco Trial Lawyers' Association and as Vice President of the Consumer Attorneys of California. He was also honored as Trial Lawyer of the Year by the San Francisco Trial Lawyers' Association and was a finalist for the Consumer Attorney of the Year award by the Consumer Attorneys of California.

[12] *See, e.g.*, *In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at *27 (N.D. Cal. Feb. 21, 2017) (appointing three co-lead counsel, liaison counsel, and a five-firm executive committee); *In re Nat'l Football Leagues Sunday Ticket Antitrust Litig.*, 2016 WL 6693146, at *4 (C.D. Cal. May 23, 2016) (appointing four co-lead counsel and five committee members); *Ehler v. IPEX, Inc.*, 2009 WL 1392075, at *2 (D. Colo. May 15, 2009) (appointing five interim co-lead counsel).

the talented attorneys at Javerbaum, liaison counsel is appropriate here because Javerbaum is the only law firm that has sought to lead this case with offices in Newark and throughout the state.

Javerbaum has been involved in several of the largest, high-profile class actions in the country, including *In re Roundup Prods. Liability Litig.*, MDL No. 2741 (N.D. Cal.); *In re JUUL Labs, Inc., Marketing, Sales Practices, and Prods. Liability Litig.*, No. 19-md-02913-WHO (N.D. Cal.); and *Gilead Tenofovir Cases*, No. CJC-19-005043 (Cal. Super.), and has recovered tens of millions of dollars on behalf of its clients.

Primarily litigating this case on behalf of Javerbaum is Stanley King. Mr. King is a partner at the firm with extensive experience leading and litigating complex cases, both criminal and civil, including serving as lead counsel in an 88-plaintiff consolidated civil case. He has achieved several multi-million-dollar settlements on behalf of his clients over the course of his career. Mr. King has been a featured speaker at the University of Pennsylvania, Rutgers University, and Rowan University, and has served as a panelist at New Jersey's Federal Judicial Conference where he lectured on civil litigation. Mr. King has received numerous accolades for his professional accomplishments, such as, in 2020, the Mary Philbrook Public Interest Award from Rutgers University Law School for his dedication and work in the public's interest, in 2019, the Judge John F. Gerry Award from the Camden County Bar Association for his contribution to the legal profession and the State of New Jersey, and in 2018, the Rev. Dr. Martin Luther King, Jr. Champion of Social Justice and Equality Award by Rutgers Law School.

## CONCLUSION

The Davis Plaintiffs respectfully request that the Court appoint SWCK as Interim Co-Lead Counsel and Javerbaum as Liaison Counsel.

Dated: November 2, 2026

Respectfully submitted,

*/s/ Matthew S. Weiler*

Matthew S. Weiler*
Todd M. Schneider*
Raymond S. Levine*
Braden R. Leach*
**SCHNEIDER WALLACE**
**COTTRELL KIM LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
tschneider@schneiderwallace.com
mweiler@schneiderwallace.com
rlevine@schneiderwallace.com
bleach@schneiderwallace.com
(* *Pro hac vice* forthcoming)

*Attorneys for Plaintiffs Darius Davis,*
*Kory Anderson, and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 2, 2026, I caused to be served a copy of the foregoing Memorandum of Law in Support of Cross-Motion to Appoint SWCK as Interim Co-Lead Counsel and Javerbaum as Liaison Counsel on all counsel of record via the Court's CM/ECF system.

*/s/ Matthew S. Weiler*
Matthew S. Weiler

*Attorney for Plaintiffs Darius Davis,*
*Kory Anderson, and the Proposed Class*