**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

LARKIN LEE ANDERSON, JR.; JAYLON HURSTON; ERIK GUILLEN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., AMAZON.COM SERVICES, LLC, and AMAZON LOGISTICS, INC.,

Defendants.

Civil Action No. 2:26-cv-09977 (JXN-JBC)

Motion Day: December 7, 2026

**PLAINTIFFS' OPPOSITION TO CROSS-MOTION TO APPOINT SWCK AS INTERIM CO-LEAD COUNSEL AND JAVERBAUM AS LIAISON COUNSEL**

A. Luke Smith
John Radice
Charles Kopel
RADICE LAW FIRM, P.C.
475 Wall Street
Princeton, NJ 08540
(646) 245-8502
lsmith@radicelawfirm.com
jradice@radicelawfirm.com
ckopel@radicelawfirm.com

*Counsel for Plaintiffs and the Proposed Class*

# TABLE OF CONTENTS


**INTRODUCTION** ........ 1

**BACKGROUND** ........ 2

**ARGUMENT** ........ 3

I. Radice Law Firm Has the Resources and Record to Serve as Interim Lead Counsel. ........ 3

II. Appointing More than One Interim Lead Counsel in a Single-Defendant Action is Inefficient. ........ 5

**CONCLUSION** ........ 8

# TABLE OF AUTHORITIES

**Cases**


*Ehler v. IPEX, Inc.*, No. 08-2220, 2009 WL 1392075 (D. Colo. May 15, 2009). .......................... 7

*Henderson et al. v. Volvo Cars of N. Am., LLC et al.*, No. 09 -4146, ECF No. 40 (D.N.J. Nov. 1, 2010)........................................................................................................................... 6

*Hodges v. Bon Secours Health Sys., Inc.*, No. 16-1079, 2016 WL 4447047 (D. Md. Aug. 24, 2016). ........................................................................................................................... 5

*In re Apple Inc. Smartphone Antitrust Litig.*, 737 F. Supp. 3d 1361 (J.P.M.L. 2024).................... 7

*In re Cipro Cases I and II*, 61 Cal. 4th 116 (Cal. 2015)……………………………………………...6

*In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404 (D.N.J. 1998) .................................................... 5

*In re Oclaro, Inc. Derivative Litig.*, No. 11-3176, 2011 WL 4345099 (N.D. Cal. Sept. 14, 2011) 5

*In re Stifel Cash Sweep Litig.*, No. 25-324, 2026 WL 757331 (E.D. Mo. Mar. 18, 2026)............. 5

*Mandel et al. v. Last Brand, Inc. et al.*, No. 25- 9780, ECF No. 47 (N.D. Cal. May 7, 2026)....... 6

*Rieger v. Volkswagen Grp. of Am., Inc.*, No. 21-10546, 2023 WL 3271116 (D.N.J. May 4, 2023) ........................................................................................................................... 6

*Smith v. ZOLL Med. Corp.*, No. 23-10575, 2024 WL 278264 (D. Mass. Jan. 25, 2024)............... 5

*Steele v. United States*, No. 14-1523, 2015 WL 4121607 (D.D.C. June 30, 2015)........................ 6


**Other Authorities**


William B. Rubenstein, 3 NEWBERG & RUBENSTEIN ON CLASS ACTIONS (6th ed. 2024) ............. 7

Plaintiffs Larkin Lee Anderson, Jr., Jaylon Hurston, and Erik Guillen respectfully submit this memorandum of law in further support of their motion to appoint the Radice Law Firm, P.C. ("Radice Law Firm") as Interim Lead Counsel[1] and in opposition to the motion of Darius Davis and Kory Anderson (together, the "cross-movants") to add additional firms as Interim Co-Lead Counsel and Liaison Counsel.[2]

**INTRODUCTION**

The cross-movants agree with Plaintiffs that the interests of the class of Amazon delivery service provider ("DSP") employee drivers will be best served by Court appointment of Interim Lead Counsel under Rule 23(g)(3) of the Federal Rules of Civil Procedure. In this single-defendant case, however, there is no need for, and it is inefficient to have, multiple firms act as Interim Co-Lead Counsel and an additional firm as Liaison Counsel. The class will benefit from having a single firm make decisions for the class and allocate and oversee work responsibilities as necessary. With one clock in the room, everyone knows the time; with multiple clocks, no one does.

Radice Law Firm is the correct choice for Interim Lead Counsel. SWCK's memorandum describes the size and power of Amazon to convey to the Court that the task at hand is too daunting for one firm. But the New Jersey-based Radice Law Firm regularly sues and represents Fortune 500 companies. It has a wealth of experience leading and litigating large, nationwide class actions and a successful track record in this District. It has also already begun coordinating with counsel for the New Jersey Attorney General to ensure efficient prosecution of the parallel public and

---

1 ECF No. 24.

[2] ECF No. 26. Cross-movants seek to add Schneider Wallace Cottrell Kim LLP ("SWCK") as another Interim Co-Lead Counsel alongside the Radice Law Firm, and Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, P.C. ("Javerbaum") as Liaison Counsel.

private actions. Radice Law Firm regularly works with other firms and plans to do so in this action if it is beneficial for the class. Still, it is most efficient for both the class and the Court to have one lead firm managing, allocating, and overseeing that work.

For these reasons and those outlined below, the Court should grant Plaintiffs' motion to appoint Radice Law Firm as Interim Lead Counsel and deny the cross-movants' motion to appoint SWCK as Interim Co-Lead Counsel and Javerbaum as Liaison Counsel.

## BACKGROUND

On August 6, 2026, Radice Law Firm filed the first class action on behalf of Plaintiffs Anderson and Hurston and a nationwide class of delivery drivers employed or formerly employed by Amazon's DSPs. A full month later, after Radice Law Firm began working with an expert labor economist, preparing an amended complaint, and corresponding with counsel for the New Jersey Attorney General, attorneys from SWCK, a firm headquartered in Emeryville, California, filed the *Davis* action in the Northern District of California.[3] The *Davis* action asserts antitrust claims on behalf of the same class and concerning the same misconduct, including data from publicly available articles regarding DSP driver wages and injury rates. One month later, SWCK stipulated with counsel for Amazon to transfer the *Davis* action to this Court.[4]

Radice Law Firm filed an amended complaint in this action on October 15, 2026, including an original analysis of wage data conducted by Plaintiffs' expert economist.[5] Two weeks later, SWCK filed another action on behalf of the same putative class.[6] Beginning in early October, attorneys from Radice Law Firm and SCWK held several conversations regarding

---

[3] *See Davis v. Amazon Inc. et al.*, No. 5:26-cv-09948, ECF No. 1 (N.D. Cal.).

[4] *Id.* at ECF Nos. 18-19.

[5] ECF No. 23, pp. 16-17.

[6] *Anderson v. Amazon.com, Inc.*, No. 2:26-cv-14176, ECF No. 1 (D.N.J.).

consolidation of these class actions and appointment of an interim class counsel structure. Throughout these discussions, Radice Law Firm has expressed willingness to consolidate the actions and collaborate with SWCK, but maintained that Radice Law Firm is better suited to serve as sole Interim Lead Class counsel. On October 2, 2026, SWCK indicated it would agree to a structure in which Radice Law Firm is Interim Lead Counsel and SWCK assists in an Executive Committee role; three days later, however, SWCK took the position that it will only collaborate if both firms are appointed as Interim Co-Lead Counsel.[7]

Plaintiffs moved to appoint Radice Law Firm as Interim Lead Counsel on October 16, 2026.[8] SWCK responded on November 2, not opposing Plaintiffs' motion but seeking appointment of SWCK as additional Interim Co-Lead Counsel and seeking the appointment of Javerbaum as liaison counsel.[9]

## ARGUMENT

### I. Radice Law Firm Has the Resources and Record to Serve as Interim Lead Counsel.

Radice Law Firm has extensive experience litigating antitrust actions from initial investigation through trial and obtaining substantial recoveries for plaintiffs and classes.[10] This includes a five-week antitrust jury trial in the District of Massachusetts in May 2026 that resulted in a verdict against Takeda Pharmaceuticals of $475 million *before* automatic trebling.[11] It also includes major settlements with other leading pharmaceutical manufacturers like Merck and

[7] *See* Declaration of Charles Kopel ("Kopel Decl.") ¶¶ 5-6, filed herewith.

[8] ECF Nos. 24-25.

[9] ECF No. 26.

[10] *See* ECF No. 25-2 (firm resume listing litigation achievements).

[11] Jury Verdict, *In re Amitiza Antitrust Litig.*, No. 1:21-CV-11057, ECF No. 903 (D. Mass.).

Pfizer,[12] and from leading multinational banks like JPMorgan Chase, Bank of America, Citigroup, Goldman Sachs, and Morgan Stanley.[13] In this District in 2018, Radice Law Firm negotiated a favorable settlement as the sole lead counsel in a class action against Conair Corporation concerning the largest ever kitchen appliance recall.[14] Earlier this month, Radice Law Firm obtained a confidential settlement as counsel *representing* leading pharmaceutical wholesalers, including Fortune 50 companies McKesson Corporation, Cencora (formerly AmerisourceBergen), and Cardinal Health in their joinder antitrust action against manufacturer Sanofi.[15] In light of this record, nothing the cross-movants say about "the significant stakes and sprawling scope of this case" suggests that a co-lead firm is necessary.[16]

The cross-motion also omits or misstates important considerations. It notes that this action followed an action filed by the New Jersey Attorney General but does not mention that Radice Law Firm has coordinated with the Attorney General from the outset in order to litigate these common claims efficiently and effectively.[17] In contrast, SWCK filed its case later, and *in California*. SWCK references the eight attorneys listed on Radice Law Firm's website and

---

[12] Docket Entry, *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 18-md-2836 (E.D. Va. Apr. 18, 2023) (confidential settlement for direct purchasers in case alleging Merck paid Glenmark to delay generic entry); Order [Granting Final Approval of Direct Purchaser Settlement], *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 14-cv-361, ECF No. 630 (E.D. Va. Apr. 18, 2018) ($94 million settlement in case alleging Pfizer fraudulently obtained patents and delayed generic competition).

[13] *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13-7789 (S.D.N.Y.), ECF Nos. 924-5 and 1095-1110 ($2.3 billion in settlements in case alleging collusion between major banks to manipulate foreign exchange rates).

[14] Order [Granting Final Approval], *Chepiga, et al. v. Conair Corp.*, No. 17-cv-1090, ECF No. 29 (D.N.J. Apr. 23, 2018).

[15] Settlement Order of Dismissal, *In re Lantus Direct Purchaser Antitrust Litig.*, No. 1:16-cv-12652-LTS, ECF No. 774 (D. Mass. Nov. 6, 2026).

[16] ECF No. 26-1 at 2.

[17] *Id.* at 2, 5.

contrasts them with SWCK's "twelve attorneys in its antitrust group alone, along with an in-house e-discovery team."[18] In reality, as the Firm Resume details, Radice Law Firm employs thirteen full-time attorneys,[19] including five attorneys on Radice Law Firm's own in-house e-discovery team,[20] and its practice is focused almost entirely on the representation of plaintiffs in antitrust class actions.

## II. Appointing More than One Interim Lead Counsel in a Single-Defendant Action is Inefficient.

Courts across the country recognize that "appointing a single law firm to serve as lead interim counsel…would be a more efficient action [than appointing multiple firms], saving resources and reducing scheduling burdens."[21] Even when the class can benefit from the efforts of attorneys at more than one firm, it is preferable for the team to operate under the direction of one sole Interim Lead law firm that makes final decisions on strategy and allocates work responsibilities to all team members.[22] Plaintiffs' Proposed Order explicitly contemplates this

---

[18] *Id.* at 5.

[19] ECF No. 25-2 at 1.

[20] Kopel Decl. ¶ 3.

[21] *Hodges v. Bon Secours Health Sys., Inc.*, No. 16-1079, 2016 WL 4447047, at *2 (D. Md. Aug. 24, 2016). *See also In re Stifel Cash Sweep Litig.*, No. 25-324, 2026 WL 757331, at *2 (E.D. Mo. Mar. 18, 2026) ("The determining factor for the Court, however, is the single firm rather than multiple firms to represent the class and subclasses of plaintiffs. 'Appointing multiple firms as co-lead counsel runs the risk of 'duplicative services and the concomitant increase in attorneys' fees.'") (quoting *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 418 (D.N.J. 1998)); *In re Oclaro, Inc. Derivative Litig.*, No. 11-3176, 2011 WL 4345099, at *4 (N.D. Cal. Sept. 14, 2011) ("Taking into account the above factors, the Court finds that appointment of J & W as lead counsel is appropriate. The Court notes that it also has considered the possibility of appointing J & W and L & K as co-lead counsel. However, this approach is not advisable because it could well drive up fees and costs as a result of duplication and thus defeat the purpose of appointing lead counsel in the first place.")

[22] *See Smith v. ZOLL Med. Corp.*, No. 23-10575, 2024 WL 278264, at *5-6 (D. Mass. Jan. 25, 2024) (rejecting motion to appoint two firms as interim lead counsel and vesting the sole lead

structure,[23] and courts in this District regularly approve it.[24] Appointment of multiple firms as Interim Co-Leads is therefore only appropriate when the size and complexity of an action make such a structure necessary.[25]

Indeed, unlike this action, the large majority of actions that the cross-movants cite in support of appointing two Interim Co-Lead firms include multiple defendants.[26] The remaining

---

counsel with authority to "select[] and oversee[] interim class counsel…to perform work at her direction on behalf of Plaintiffs and the putative class"); *Steele v. United States*, No. 14-1523, 2015 WL 4121607, at *3 (D.D.C. June 30, 2015) ("There is no need to require those who seek to work together to seek a multiple lead counsel arrangement: The Court is assured that Motley Rice, Mr. Buckley, Mr. Beck, and Mr. Rizek, have a strong working relationship and can function as a team with Motley Rice at the helm.")

[23] ECF No. 25-3 ¶ 2 ("Interim Lead Counsel shall, in its discretion, be responsible for coordinating Plaintiffs' and the putative Class's pretrial activities and shall…(e) Delegate specific tasks to other counsel or committees of counsel, in its discretion and as authorized by the Court, in a manner to ensure that pretrial preparation is conducted efficiently and effectively.")

[24] *See, e.g.*, *Rieger v. Volkswagen Grp. of Am., Inc.*, No. 21-10546, 2023 WL 3271116, at *24-25 (D.N.J. May 4, 2023) (appointing one firm as Interim Lead Counsel and two additional firms as members of the steering committee); *Henderson et al. v. Volvo Cars of N. Am., LLC et al.*, No. 09 -4146, ECF No. 40 at 2-4 (D.N.J. Nov. 1, 2010) (appointing one law firm as Interim Lead Counsel, another as Interim Liaison Counsel, and "a multitude of attorneys from various firms to serve as an Interim Executive Committee").

[25] *See Mandel et al. v. Last Brand, Inc. et al.*, No. 25- 9780, ECF No. 47 ¶ 1 (N.D. Cal. May 7, 2026) ("The Court concludes that appointment of additional co-lead counsel…is not necessary in this case. There is no conflict amongst the members of the putative class and the issues in the case are not so complex that multiple lead counsel would lead to greater effectiveness and efficiencies, rather than unnecessary duplication."); *Hodges*, 2016 WL 4447047, at *2 (rejecting request to appoint multiple co-lead law firms on the grounds that "[t]his is not a situation in which each law firm brings a complementary skill set to the litigation. Nor is this a situation involving many consolidated actions and an excessive number of parties.").

[26] *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 1:06-md-01775 (E.D.N.Y.) (35 defendants); *In re Ford Motor Co. ERISA Litig.*, No. 2:06-cv-11718 (E.D. Mich.) (32 defendants); *In re Branded Beverage Antitrust Litig.*, No. 7:25-cv-06440 (S.D.N.Y.) (2 major corporate defendants); *In re Tether & Bitfinex Crypto Asset Litig.*, No. 1:19-cv-09236 (S.D.N.Y.) (11 defendants); *Portable Power, Inc. et al. v. Energizer Holdings, Inc. et al.*, No. 5:23-cv-02091(N.D. Cal.) (2 major corporate defendants); *In re Twitter Inc. Sec. Litig.*, No. 16-cv-05314 (N.D. Cal.) (3 defendants); *In re Cipro Cases I and II*, 61 Cal. 4th 116 (Cal. 2015) (3 defendant groups); *In re Lidoderm Antitrust Litig.*, No. 3:14-md-02521 (N.D. Cal.) (3 defendant groups); *In re NFL Sunday Ticket Antitrust Antitrust Litig.*, No. 2:15-ml-02668 (C.D. Cal.) (3 defendant groups).

cases required larger Interim Lead Counsel teams on account of their size and complexity. For instance, in the *Apple Smartphone* action, this Court oversees a multidistrict litigation in which dozens of actions filed in at least five different districts have been consolidated for pretrial proceedings.[27] Similarly, in the *IPEX* action, the court endorsed a proposed appointment of five firms as Interim Lead Counsel that resulted from "negotiations between eighteen plaintiffs' law firms in several related class-action lawsuits across the country."[28]

In support of the request to appoint SWCK as Interim Co-Lead Counsel, the cross-motion refers to Newberg and Rubenstein's guidance that, "[c]ases may include lead counsel, liaison counsel, trial counsel, steering committees, coordinating committees, management committees, executive committees, etc."[29] But Newberg and Rubenstein make clear that there are many important roles to fill beyond that of lead, including "steering committees, coordinating committees, management committees, executive committees, etc." Plaintiffs' opposition to the cross-motion intends no disrespect to SWCK or the quality of its work but merely proposes that the putative class is best served by a structure in which Radice Law Firm leads the litigation and SWCK assists.

The history of this litigation illustrates why Radice Law Firm is the appropriate candidate for Interim Lead Counsel. It filed Plaintiffs' action here, in the Court overseeing the New Jersey Attorney General's action, in order to most efficiently coordinate with government enforcers. SWCK, on the other hand, filed in California, and then filed a motion to transfer the case to New

---

[27] *See In re Apple Inc. Smartphone Antitrust Litig.*, 737 F. Supp. 3d 1361, 1362 (J.P.M.L. 2024).

[28] *Ehler v. IPEX, Inc.*, No. 08-2220, 2009 WL 1392075, at *2 (D. Colo. May 15, 2009).

[29] ECF No. 26-1 at 4 (quoting William B. Rubenstein, 3 NEWBERG & RUBENSTEIN ON CLASS ACTIONS, § 10.9 (6th ed. 2024)).

Jersey.[30] Had the *Davis* action remained in California, coordination with the New Jersey Attorney General would have been more cumbersome. The extra steps taken by the SWCK team added work for the courts and churn on the file, with no benefit to the class.

Plaintiffs also oppose appointment of Javerbaum as Liaison Counsel for the simple reason that a class represented by New Jersey-based Radice Law Firm does not need an additional local New Jersey Liaison Counsel. While Javerbaum is well respected for good reason, there is no need for Liaison Counsel given that the proposed Interim Lead Counsel Radice Law Firm is based in New Jersey and has multiple attorneys admitted in this District.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for appointment of Radice Law Firm as Interim Lead Counsel and deny the cross motion filed by Darius Davis and Kory Anderson for appointment of SWCK as Interim Co-Lead Counsel and Javerbaum as Liaison Counsel.

Dated: November 20, 2026

Respectfully submitted,

*/s/Charles Kopel*
A. Luke Smith
John Radice
Charles Kopel
RADICE LAW FIRM, P.C.
475 Wall Street
Princeton, NJ 08540
(646) 245-8502
lsmith@radicelawfirm.com
jradice@radicelawfirm.com
ckopel@radicelawfirm.com

*Counsel for Plaintiffs and the Proposed Class*

[30] Even this cross-motion reveals an ongoing California focus, emphasizing SWCK's experience in litigating Cartwright Act claims and Mr. Schneider's record of leadership in the California Bar community. ECF No. 26-1 at 8-9 & n.11.